**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Byron M.P.,

Petitioner,

v.

Todd Blanche, Acting Attorney General, et al.,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-02186 (MJD/EMB)

---

Albert I. Usumanu, Counsel for Petitioner.

Pedro Del Valle, IV, David W. Fuller, Assistant United States Attorneys, Counsel for Respondents.

---

This matter is before the Court on Petitioner Byron M.P.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is currently unlawfully detained in violation of the Immigration and Nationality Act, the Administrative Procedure Act, the Fourth Amendment, and the Fifth Amendment's Due Process Clause. Respondents challenge Petitioner's arguments, maintaining that Petitioner is properly detained pursuant to 8 U.S.C. § 1225, Petitioner was detained pursuant to a warrant, and Petitioner's due process arguments are precluded by Eighth Circuit precedent.

# I. FACTS[1]

## A. Facts from Petition

Petitioner is a 28-year-old citizen of Guatemala who has lived in the United States since November 3, 2013. (Doc. 1 ¶ 14.) Petitioner entered the United States without inspection near Hidalgo, Texas. (Id.) Petitioner currently lives with his wife and their minor son, who are both United States citizens. (Id.)

Petitioner indicates that he has been served with a Notice to Appear initiating removal proceedings against him and has a pending asylum application. (Id. ¶ 17.) Petitioner also notes that he is a beneficiary of an approved Petition for Alien Relative Form I-130 filed by his wife, which is presumably the first step for someone to apply for a Green Card. (Id.) Petitioner has also filed his Form I-601A Application for Provisional Unlawful Presence Waiver which has been pending for almost two years. (Id.)

On April 4, 2026, Petitioner was arrested by the Cottage Grove Police Department for misdemeanor domestic assault against his wife in violation of Minnesota Statue § 609.2242.1(1). (Doc. 7 at 2; Doc. 8-3.) Respondents assert that upon becoming aware of Petitioner's arrest, ICE procured an I-200 – an ICE

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

administrative warrant titled "Warrant for Arrest of Alien" – on April 5, 2026. (Doc. 7 at 2; Doc. 8-1.)

On April 6, 2026, Petitioner was detained by ICE following his arraignment outside the courthouse in Stillwater, Minnesota. (Doc. 1 ¶ 16; Doc. 7 at 2.) Petitioner indicates throughout his Petition that Respondents detained him on April 6, 2026 without a warrant. (Doc. 1 ¶¶ 21, 40.)

On April 8, 2026, Petitioner filed a petition for writ of habeas corpus. (Doc. 1.) Respondents responded by arguing that that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225, Respondents had a warrant when they effectuated Petitioner's arrest, and Procedural Due Process does not entitle Petitioner to a bond hearing or release. (Doc. 7 at 2–9.) Petitioner did not submit a reply.

**B. Additional Briefing on the Warrant**

On April 30, 2026, the Court ordered additional briefing from the parties to explain the discrepancies between Petitioner's account of being arrested without a warrant, Respondents' indication that they maintained a warrant at the time of Petitioner's detention, and the inconsistencies in the I-200 provided to the Court. (Doc. 9.) Specifically, the warrant provided is dated April 5, 2026, one day prior to Petitioner's arrest, but the electronic signature following Officer Carey's name

indicates "Date: 2026.04.06 20:35:45." (Doc. 7-2.) The Court ordered Respondents to explain this discrepancy; otherwise, the Court would analyze Petitioner's claim under the INA's warrantless arrest statute pursuant to 8 U.S.C. 1357. (Doc. 9.)

On May 7, 2026, Respondents filed their response to the Court's request for additional briefing. (See Doc. 10.) Respondents maintain that they obtained a warrant prior to Petitioner's arrest on April 6, 2026. (Id. at 1.) Respondents indicate that once Petitioner was taken into custody on his domestic violence charge, the jail entered his biometric data into a national database, and it was "inevitable that Respondents would find Petitioner." (Id.) Respondents state that they "lodged a detainer and an accompanying warrant with the Washington County Jail at 5:48 AM on April 5, 2026," which included a copy of a warrant for a person's arrest, in order to request the jail to hold Petitioner. (Id. at 1–2.)

On April 6, 2026, the Washington County Jail notified ICE that Petitioner was scheduled to be released. (Id. at 2) At that time, ICE was "unable to locate the original I-200 issued by PERC on April 5, 2026," and instead, reissued the original I-200 on April 6, 2026. (Id.) According to Respondents, they then arrested

Petitioner without incident and served him the re-issued arrest warrant at the Sherburne County Jail in Minnesota. (Id.)

Respondents state that this explanation accounts for the discrepancy on the signature date, and that Respondents originally submitted the re-issued warrant to the Court because "it was the warrant that Petitioner actually had as he was booked for processing." (Id.) Respondents conclude by arguing that warrantless arrest analysis should be foreclosed based on this information. (Id. at 3.)

To support their position, Respondents provide a declaration from Nicholas Carey, ICE Supervisory Detention and Deportation Officer, confirming Respondents' telling of the facts. (Doc. 11.) In addition, Respondents provide the first warrant, which is dated April 5, 2026, with an electronic time stamp of "05:12:39." (Doc. 11-1.) Respondents also provide a copy of the second warrant that matches their first submission. (Doc. 11-2.)

Petitioner does not meaningfully challenge Respondents' response on the warrant's authenticity. (Doc. 12.) Instead, Petitioner invokes the warrantless arrest statute and accompanying regulations to state that Respondents cannot demonstrate that Petitioner was "likely to escape." (Doc. 12 at 1.) Petitioner asserts that "[n]othing in Respondent's additional briefing and attempts at

explaining discrepancies in their warrant have any facts that Petitioner . . . 'was "likely to escape" before a warrant could be obtained.'" (Id. at 2.)

### C. Petitioner's claims

Petitioner argues that his detention 1) violates the Immigration and Nationality Act ("INA") (Count I); 2) violates the Administrative Procedure Act (Count II), violates the Fourth Amendment (Count III), and 4) violates the Fifth Amendment's Due Process Clause (Count IV).

## II. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs

throughout immigration law." Id. The petitioner bears the burden to prove illegal detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. INA Statutory Framework**

**1. 8 U.S.C. 1226 and 8 U.S.C. § 1225**

Respondents assert that Petitioner is currently mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 7 at 2–3.) On March 25, 2026, the Eighth Circuit adopted the Respondents' position on this matter, finding that those noncitizens residing in the United States are subject to mandatory detention under § 1225(b)(2), as opposed to the discretionary detention framework contained in § 1226. See Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026).

However, while Respondents invoke § 1225(b)(2) now, they did not arrest Petitioner under that statute. (See Doc. 7 at 3 ("The arrest was lawful because the Respondents acted pursuant to a valid arrest warrant [I-200] dated April 5, 2026.").) Rather, they cited the discretionary detention provisions of 8 U.S.C. § 1226 in the Form I-200 Administrative Warrant. (See Doc. 8-1 (directing the warrant to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act

and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations").)

Because Respondents represented to Petitioner in this warrant that his arrest was based on § 1226(a), the Court holds Respondents to that representation and considers the arrest under the discretionary detention framework of § 1226. Martha C.G.P. v. Blanche, 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (citing Francisco M.A. v. Blanche, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *1 (D. Minn May 5, 2026)). Section 1226(a) prefaces arrest "[o]n a warrant issued by the Attorney General." Thus, to detain a noncitizen under § 1226(a), a warrant is required. Id. at *3 (citing Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases)).

Consequently, in spite of the Avila decision, the Court must consider whether the Petitioner was properly arrested with a warrant pursuant to § 1226.

**2. 8 U.S.C. § 1226 & Accompanying I-200**

Petitioner asserts throughout his Petition that Respondents detained him on April 6, 2026 without a warrant. (Doc. 1 ¶¶ 21, 40.) Respondents argue that they procured an I-200 warrant on April 5, 2026, and that despite not being

"unable to locate the original I-200," the original warrant "remained in effect even as a warrant was re-issued," justifying his arrest. (Doc. 7 at 3–4; Doc. 10 at 2–3.)

While the Court requested additional information to verify the authenticity of the I-200, this case ultimately does not turn on that question. Instead, the fact that Respondents failed to include a Notice to Appear ("NTA") that pre-dates the I-200 is the issue that is dispositive here.

A Form I-200 is the administrative arrest warrant that authorizes a non-citizen's arrest. However, the I-200 must be issued "[a]t the time of issuance of the notice to appear [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). This Court – as well as others in the District – has previously relied on the reasoning in Castanon Nava v. Dep't of Homeland Sec, where the Northern District of Illinois determined that ICE lacks the authority to engage in issuing I200 "warrants" in the field without "concurrent or prior issuance of a Notice to Appear." See No. 18-CV-3757, 2025 WL 2842146, at *17 (N.D. Ill. Oct. 7, 2025). See Fabian T.C. v. Pamela Bondi, et al., Case No. 26-01740 (MJD/DJF) (D. Minn. March 12, 2026 Order); see also Javier H.O. v. Bondi, Case No. 26-cv-1212 (JRT/ECW) (D. Minn. February 14, 2026

Order) ("The Court is persuaded by the reasoning put forth in Castanon Nava v. Department of Homeland Security—that ICE lacks statutory and regulatory authority to engage in a policy of issuing I-200 warrants to collaterals in the field without the concurrent or prior issuance of a notice to appear."). Failure to provide an accompanying NTA invalidates an I-200 altogether. See Oscar R.R.G. v. Pamela Bondi, Case No. 26-cv-01204 (JRT/SGE) (D. Minn. February 13, 2026 Order) ("[b]ecause Respondents have not provided a corresponding NTA, the Court concludes that this warrant is not valid.").

Respondents did not provide an NTA that was generated before or at the same time as the I-200. Consequently, the Court cannot verify that ICE was acting within its statutory and regulatory authority when officers allegedly served the I-200 on Petitioner, and the I-200 will be considered invalid.

As a result, the Court will consider Petitioner's arrest "warrantless" and will analyze Petitioner's arrest and subsequent detention under the INA's warrantless arrest statutory framework and accompanying regulations.

**3. Interaction between 8 U.S.C. 1225 and 8 U.S.C. 1357**

As noted above, the Eighth Circuit determined that noncitizens residing in the United States who entered without inspection are "seeking admission" and

thus subject to mandatory detention under 8 U.S.C. 1225(b)(2). See Avila, 170 F.4th at 1128. However, the INA separately addresses the circumstances under which immigration officers may conduct warrantless arrests. See 8 U.S.C. § 1357.

Section 1357(a)(2) permits immigration officials to arrest a noncitizen without a warrant only where the officer has "reason to believe" that 1) "the alien . . . is in the United States in violation of any such law or regulation," and 2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). If immigration officers could automatically arrest all noncitizens they determine are not lawfully present under § 1225, the second requirement that a noncitizen is "likely to escape" before a warrant could be obtained would be entirely meaningless. Therefore, because there is no reason for the Court to consider otherwise, immigration officials must still comply with these requirements in § 1357(a)(2) when making a warrantless arrest, regardless of whether the noncitizen will then be considered mandatorily detained pursuant to § 1225(b)(2).

**4. 8 U.S.C. 1357(a)(2) Analysis**

Section 1357 implicates the Fourth Amendment's protections. Specifically, the Fourth Amendment protects all individuals from "unreasonable searches and

seizures." U.S. Const. amend. IV. An arrest qualifies as a "seizure" and therefore must be supported by probable cause. United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992). The Eighth Circuit has made clear that the Fourth Amendment's protections apply to "seizures" of noncitizens. See United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010). Because § 1357(a)(2) implicates seizures of noncitizens, the Eighth Circuit has also stated that the statute's use of the term "reason to believe" means "constitutionally required probable cause." Id. Probable cause exists when, based on the totality of the circumstances, the facts are "sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021).

Putting this all together, for the warrantless arrest of Petitioner to be valid under § 1357(a)(2), Respondents must have had probable cause to support that Petitioner was 1) not lawfully present and 2) likely to escape before they could get a warrant based on the totality of the circumstances.

The facts do not support that Petitioner was likely to escape before Respondents could obtain a warrant. A determination that someone is "likely to escape" requires a "particularized assessment" of the unique circumstances at

issue. Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017). Any noncitizen without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen. See Moreno v. Napolitano, 213 F. Supp. 3d 999, 1007 (N.D. Ill. Sept. 30, 2016) ("[it cannot] be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless.").

Respondents here do not argue that officers maintained probable cause to support a finding that Petitioner was likely to escape before they could obtain a warrant. Instead, through both rounds of briefing, Respondents maintain that Petitioner's arrest was not warrantless and was instead pursuant to a valid I-200.

Respondents' failure to argue in the alternative and provide evidence that Petitioner was likely to escape is, on its own, sufficient to grant the petition. See Orellana, 230 F. Supp. 3d, at 946 ("Without any showing that [Defendant] was likely to escape before a warrant could be secured, the warrantless arrest made under § 1357(a)(2) violates the Fourth Amendment."). However, the record independently demonstrates that Respondents lacked probable cause to believe Petitioner was likely to escape before a warrant could be issued. Petitioner made

no attempt to drive away or flee on foot, unlike in a case where such a finding was justified. See e.g., Zhuang v. Bondi, No. 1:25-CV-00201-CMS, 2026 WL 352872, at *2 (E.D. Mo. Feb. 9, 2026) (finding that the arresting agent had reason to believe that Petitioner was "likely to escape" when he attempted to flee during his stop."); Luis G.G. v. Noem, No. 5:26-CV-05023-KES, 2026 WL 836807, at *2 (D.S.D. Mar. 26, 2026) (finding that Petitioner was "highly likely to flee" because officers knew he was a "a passenger in a vehicle whose driver rammed a government vehicle, fled, and twice attempted to evade arrest.").

Instead, the briefing makes clear that Petitioner was not living underground; despite entering the country without inspection, Petitioner had made his presence known to immigration officials by filing a Petition for Alien Relative Form as well as an Application for Provisional Unlawful Presence Waiver. (Doc. 1 ¶ 17.) Petitioner is also currently living with his wife and son, both of whom are United States citizens. (Id. ¶ 14.) The Court acknowledges that the criminal complaint filed with Respondents' materials indicates that Petitioner's wife stated that her "soon to be ex-husband" had entered her home, refused to leave, and forcibly dragged her to the basis to leave as the basis of the domestic assault charge. (Doc. 8-3.) Still, however, Respondents fail to tie the

criminal charge to any argument that Petitioner was "likely to escape" before they could obtain a warrant for his arrest.

Accordingly, even if Respondents had reason to believe that Petitioner was unlawfully present in the United States at the time they arrested him, there is nothing in the record suggesting that Petitioner was likely to escape before a valid arrest warrant could be obtained and executed. The Court agrees with the ultimate finding in Hector J.A.S., where the Court determined that "[b]ecause Respondents have not shown that Petitioner was likely to escape, they failed to comply with 8 U.S.C. § 1357 . . . Respondents, therefore, improperly arrested and detained Petitioner under 8 U.S.C. § 1225(b)(2)." No. CV 26-2242 (JRT/DLM), 2026 WL 1243500, at *3 (D. Minn. May 6, 2026).

**C. Remedy**

In conclusion, the Court finds that Petitioner's detention is unlawful. First, Respondents arrested Petitioner under § 1226 with an I-200 but then failed to provide the required NTA. Second, even if Respondents arrested Petitioner under § 1225, which does not require a warrant, Petitioner was not a flight risk under § 1357. Therefore, Respondents exceeded the scope of their statutory authority in effectuating Petitioner's warrantless arrest.

Because the Court makes such determination, the Court finds that Respondents have not offered any lawful basis for Petitioner's continued detention. As such, release is the appropriate remedy. See e.g., Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings.") (quoting Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS) (D. Minn. Dec. 19, 2025) (Doc. 9 at 6.)).

Furthermore, resolution of the Fourth Amendment issues renders discussion of Petitioner's other arguments unnecessary.

## III. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** as follows:

    a. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

    b. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained

in substantially the same condition as when the items were taken during his arrest, such as his driver's license, immigration papers, passport, cell phone, and keys;

c. Petitioner shall be released on his own recognizance without any conditions upon his release; and

2. Respondents are ordered to confirm Petitioner's release from custody as well as the Respondents' compliance with the rest of the Court's Order within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 8, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court